UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**DAVID MILLER** *et al.*                                                                                                                    **PETITIONERS**

**v.**                                                                                              **CIVIL ACTION NO. 3:05CV-284-S**

**COMMONWEALTH OF KENTUCKY CABINET**
**FOR HEALTH & FAMILY SERVICES** *et al.*                                                **RESPONDENTS**

### MEMORANDUM OPINION

Petitioners David and Diana Miller (hereinafter, "the Millers") filed a petition for writ of habeas corpus in their own names and on behalf of their four minor children (DN 1). While the Millers fail to specify under which habeas statute they bring this action, the Court construes the petition as one pursuant to 28 U.S.C. § 2254, because the Millers allege that their children are "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). The petition is currently before the Court for preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. For the reasons that follow, the petition will be denied, and the action will be dismissed.

### I.

The Millers allege that they have been deprived of their four minor children by agents and employees of the Commonwealth of Kentucky and seek the immediate return of custody of their children. They name the following Respondents: the Commonwealth of Kentucky Cabinet for Health and & Family Services (hereinafter, "CHFS"); Jefferson Family Court Judge Jerry Bowles; Belinda Curtsinger, a CHFS employee; and the Home of the Innocents.[1]

---

[1] The Home of the Innocents provides, in part, emergency and long-term residential treatment to children who have been abused, abandoned and neglected. www.metrounitedway.org/agencies.shtml.

According to the petition, four temporary removal hearings were held, all based on false allegations. The Jefferson Family Court ordered removal of the children in October 2003, but the children were not taken away from the Millers until March 2004.[2] On October 6, 2004, a petition for involuntary termination of parental rights was filed. Several hearings were held thereafter, but it does not appear that the state court has yet to rule on the petition for termination of parental rights.[3]

The Millers raise several claims. First, they allege that Jefferson Family Court has conspired to violate their federal civil rights "by the team approach and by failing and refusing to provide competent counsel to represent the parents." Next, they claim that Judge Bowles conducted a trial without notifying them and then found that their children "were dependent, neglected or abused." Petitioners claim, however, that the judgment was obtained by fraud on the court and by perjury without procedural due process rendering the judgment void. Finally, Petitioners claim that the Kentucky abuse and neglect statute is vague and overbroad on its face and as applied.

## II.

"[A]lthough the scope of the writ of habeas corpus has been extended beyond that which the most literal reading of the statute might require, the [Supreme] Court has never considered it a generally available federal remedy for every violation of federal rights." *Lehman v. Lycoming*

---

[2] It appears that the children are at the Home of the Innocents. The Court also notes that in their unverified petition, the Millers allege that "[w]hile in the control of the Commonwealth of Kentucky the children have been injured and in constant danger of death or serious bodily harm from the intentional conduct and neglect of agents and employees of the Commonwealth."

[3] In a document filed after the initial habeas petition, Petitioners reported that Judge Bowles had stepped down from their case and that "the case is in Judge Garvey's courtroom waiting for a trial date for Termination of Parental Rights." (DN 8).

*County Children's Servs. Agency*, 458 U.S. 502, 510 (1982).  In the instant case, the Millers seek federal habeas relief, challenging state court custody orders and proceedings.  The Supreme Court has noted, however, that "a federal habeas corpus statute has existed ever since 1867, [but] federal habeas has never been available to challenge parental rights or child custody."  *Id.* at 511; *Hall v. Beast*, 116 Fed. Appx. 557, 559 (6th Cir. 2004) (finding habeas relief unavailable where petitioner challenged the state's removal of the children from the home and challenged the state's decisions pertaining to custody of the children.); *Loss v. Eggleston*, No. 89-1174, 1989 WL 65531, at *1 (6th Cir. June 19, 1989) ("The habeas writ may not be used to challenge state custody orders which have the effect of involuntarily removing children from the custody of their parents.").

In *Lehman*, the Supreme Court considered the petitioner's argument that because her sons were in foster homes pursuant to a state court order, her sons were involuntarily in the custody of the State for purposes of § 2254.  458 U.S. at 510.  In concluding that "[t]he 'custody' of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas," *id.* at. 511, the Court noted that the children were not prisoners, *id.* at 510; did not suffer any restrictions imposed by a state criminal justice system, *id.*; and were "in the 'custody' of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents."  *Id.*

Similar to the children in *Lehman*, the Millers' children are not prisoners, they do not suffer restrictions imposed by a state criminal justice system, and they are in the custody of the

Home of the Innocents.[4] Moreover, "[t]he State's interest in finality is unusually strong in child-custody disputes." *Id.* at 513.

As expressed by the United States Supreme Court, "extending the federal writ to challenges to state child-custody decisions . . . would be an unprecedented expansion of the jurisdiction of the lower federal courts." *Lehman*, 458 U.S. at 512; *Owens v. Schwanke*, No. 86-5613, 1987 WL 36979, at *1 (6th Cir. Apr. 8, 1987) ("[F]ederal courts lack jurisdiction to hear habeas corpus claims collaterally attacking state court judgments in child custody matters."). Because the Millers are challenging state court custody decisions, this Court is without jurisdiction to consider the habeas petition,[5] and the petition will be denied.

Alternatively, even if the Court had jurisdiction over the habeas action, the Millers have failed to demonstrate exhaustion of available state remedies. It is axiomatic that one may not seek federal habeas corpus relief until he has exhausted all available state remedies or demonstrated their inadequacies. 28 U.S.C. § 2254(b); *Hannah v. Conley*, 49 F.3d 1193 (6th Cir.

---

[4]In *Lehman*, the Court expressed "no view as to the availability of federal habeas when a child is actually confined in a state institution rather than being at liberty in the custody of a foster parent pursuant to a court order." 458 U.S. at 511 n.12. While the Home of the Innocents receives private, state and federal funds, www.homeoftheinnocents.org, the Home is "a local charitable organization." *Brewer v. Lincoln Intern. Corp.*, 148 F. Supp. 2d 792, 798 (W.D. Ky. 2000); *Louisville Garage Corp. v. City of Louisville*, 198 S.W.2d 40 (Ky. 1946) (same). And, in any event, the Millers have not shown that their children are in the custody of the Home of the Innocents in a way different than other children in the custody of their natural or adoptive parents. *Cf. Amerson v. State of Iowa, Iowa Dep't of Human Servs.*, 59 F.3d 92, 94-95 (8th Cir. 1995) (finding that the Iowa Department of Human Services' placement of a child in a state institution was not "custody" as that term is used in the habeas statute).

[5]Additionally, "the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). If the Court were to issue a writ of habeas corpus returning the custody of the Millers' children to the Millers, it would be, in effect, issuing a custody decree, which is prohibited. *Id.* at 702 (noting that in *In re Burrus*, 136 U.S. 586, 594 (1890), "the Court held void a writ issued by a Federal District Court to restore a child to the custody of the father").

1995).  Any alleged constitutional deprivations must be asserted through the state appellate process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that [petitioners] must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  In the Sixth Circuit, a habeas petitioner must normally present his claim to the state's highest court in order to exhaust.  *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The burden is on the petitioner to demonstrate compliance with the exhaustion requirement or that the state procedure would be futile.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement applies to remedies still open to the petitioner at the time he files the habeas petition.  *Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir. 1979).

      The Court acknowledges that in the petition the Millers claim that they "have exhausted or been deprived of their state remedies by operation of state law and the conduct of state agents and employees."  This broad allegation, without more, is simply insufficient to demonstrate exhaustion, especially given the apparent pendency of the state court custody action.  Even if the family court action has been terminated, there is no allegation that the appeal process is ineffective or that the appellate courts are unable to address the Millers' claims.  *See*, *e.g.*, *Castorr v. Brundage*, 674 F.2d 531, 535 (6th Cir. 1982) ("A federal court is not the proper forum for child custody proceedings, especially where State remedies are available.").

## III.

Before a petitioner may appeal a district court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Because the Court is satisfied that no jurists of reason could find its ruling to be debatable or wrong under the standard set forth in *Slack*, a certificate of appealability will be denied.

The Court will enter an Order consistent with this Memorandum Opinion.

Date:

cc:	Petitioners, *pro se*
	Respondents
	Jefferson County Attorney
4411.005